LEONARD LEWIS, Appellant, *v.* THE STATE OF KANSAS, Appellee.

*Criminal Appeal from Shawnee County.*

*Generally,* the evidence in a case must be confined to the point in issue; but where it is referable to the point in issue, it will not be inadmissible, though incidentally applicable to another person or thing not included in the transaction in question; and this, to prove a *scienter,* to make out the *res gesta,* or to exhibit a chain of circumstances. Under this rule, *held* that it was not error, in an action for larceny brought against appellant and three other persons, in the taking of property found in possession of the four, for the court below to admit evidence, showing that the four squatted on the premises together—together cut hay, and built unusual and hollow stacks (in one of which the property in question was found), the relationship of the four, their manner of life, the varied kinds of articles identified as the property of different persons, living in different directions, found secreted in the cavities in the stacks, and in various places on the premises, and that the three escaped before trial—this evidence all tending to show a chain of circumstances pointing to the guilt of appellant, if not as principal, as an accessory before the fact, in which case he would be equally guilty. [Comp. L., 252, § 101; p. 341, § 276.]

Where the guard of the prisoners, a witness for defendant, testified that the defendant refused to escape with the others, and that he had the same facilities, and on cross-examination, when asked if he did not, at a certain

time and place, tell the sheriff that at the time of the escape defendant was sick, and could not get out, and witness answered that he did not remember, and where the sheriff was sworn for the State, *held,* that it was competent for him to testify that on the occasion named, witness did tell him that defendant was sick at the time of the escape, and could not run. [2 Phil. Ev., 435; 1 Greenl. Ev., 606, note.]

If the prosecution, in a criminal case, rests its case on possession of the fruits of crime *alone,* then the possession should be absolute and exclusive where one alone is charged with the offense; but when others are jointly charged, and other circumstances are proved, proof of joint possession may be sufficient as one of many items of testimony, and it is not error so to charge.

It is proper for the court below to refuse an instruction, though it is law, when not applicable to the facts proved, and to substitute an instruction that does apply.

The law does not prohibit a separation of the jury, with proper admonition by the court, *before* the case is submitted to them, and such separation is not error.

This case was founded on an information filed in the district court of Shawnee county, November, 1867, charging the appellant, Leonard Lewis, Van Buren Lewis, Charles Lewis, and Sandford Rounds, with the larceny of a set of double harness, of the value of $50, the property of John W. Surfis. The four persons charged were arrested; the three last named prisoners escaped before the trial. On the trial of the appellant alone, it was proved that the harness in question was the property of Surfis, and of the value of $50; that it was stolen Oct. 6th, and that the officer who made the arrest found it on the premises occupied by the four persons charged.

The evidence objected to was substantially as follows:

That appellant and his sons, Van Buren and Charles Lewis, and his brother-in-law, Rounds, came into this state and squatted upon the premises which they occu-

pied when arrested, about the first of August, 1867. That they all lived together in a twelve-by-fourteen-foot shanty, having but one room and a garret, with no stairs leading to it. The shanty was situated among the bushes, a half or three-quarters of a mile from any neighbor. The shanty contained a stove, and bedding, but no bedstead. The family, thirteen in number, slept in the cabin and in three wagons near.

Fifteen or twenty rods from the house was a stable of novel construction, used by the defendants charged; they cut hay together on the prairie, and built a circular stack nearly surrounding the stable, and forming a part of it. That this stable and stack were more particularly the property of Rounds, but that all four persons aided in its construction, and defendant kept his horses in it. In the north end of this stack, and in the center thereof, was a circular aperture constructed of logs, accessible only by means of a concealed passage, terminating under the manger of the stable. In the south end of the circular stack, in the center, was a conical cavity, constructed like a wigwam, with its secret entrance. A half-mile from the house they built another stack with a hollow receptacle in the center, and an entrance filled in with hay, at the outside. This stack was probed by the officer. In the cavity was found three gunny sacks full of harness; two barrels of salt, fifteen milk crocks and one stone jar were found in the house. On search of the officer and other persons, was found on the premises one box of "Martha Washington's hair restorer," in a wagon box; one barrel of molasses in the bushes; a scoop-shovel, some chains and saddles between the stacks around the stable; boxes of harness and carpenter's tools in the cabin loft; harness, doubletrees

and neckyokes—near a wagon load, were found in the circular log cavity of the circular stack—a part of the harness in gunny sacks, amidst loose collars, bridles, &c. Smoking meat was discovered in a hole in the ground, covered with poles and dirt. Harness and carpenter's tools, concealed under hay, were found behind the manger of the stable, in a sack, bearing the name of the owner of the harness and sack, living miles away. A wood-saw, a basket, a bucket, and six and one-half bushels of potatoes were found in a hole in the stack, and on the premises, belonging to the same person; and bushels of potatoes were found in another place, belonging to another man, living in another direction, back of whose premises, on an unfrequented way, the appellant had been seen with a wagon, about the time the potatoes were stolen. Corn was found between the apartments of the stable and the stack. That two wagon loads of articles were found and seized. Many of the articles were identified as stolen property, gathered from all directions.

The evidence was objected to on the ground of its incompetency, as not being confined to the question at issue—the guilt of Leonard Lewis, and was by the court admitted, and exceptions preserved.

Other points were raised on the trial, on the instructions to the jury, refused and given by the court, and as to impeaching evidence; the facts bearing upon which, fully appear in the subjoined opinion.

*Douthitt, Spencer* and *Lewis*, for appellant.

*Tom Ryan*, for the state.

For appellant, it was submitted :

The evidence admitted under objection was not competent.

1. The evidence relating to other articles found on the premises, than the harness in question, was not competent, because—*a.* It could only tend to prove other distinct offenses committed by somebody. There is no connection between these larcenies and the one charged against the defendant. The evidence must be confined to the point in issue. This necessity is stronger in criminal than in civil cases. The person charged with crime can only be expected to meet the charge set out in the information, and the transaction out of which it grew. Evidence tending to prove other distinct offenses, could at most only show a tendency on the part of defendant to commit crime, and this is not allowed. (*Roscoe's Cr. Ev.*, 81 ; *Wharton Cr. L.*, § 647 ; 10 *Ind.*, 106.) It must be shown that the criminal act which is sought to be given in evidence, is necessarily connected with the transaction out of which the offense charged grew, or that it furnishes a clue to the motive. (*Roscoe*, 82 ; *Phil. Ev.*, 768 [*4th Am. Ed.*] ; *Wills Circumstan. Ev.*, 64 to 75.) *b.* The evidence does not show that defendant was in a position, at the time of the commission of the offense charged, to aid and abet, nor that he committed the crime. (3 *Greenl. Ev.*, § 40.) This must be shown beyond a reasonable doubt. (1 *Arch. Cr. L.*, 664.) *c.* There was no proof that the stable and stacks belonged to defendant. The proof shows that they did belong to Rounds, and that he used them. The evidence does not show that the property in question was in the possession—much less the exclusive possession—of

defendant, and therefore the great mass of evidence prejudicial to the jury induced them to find a verdict of guilty, on "general principles," rather than on evidence strictly and indubitably connected with the *factum probandum.* *d.* In order to justify the inference of legal guilt, from circumstantial evidence, the existence of the inculpatory facts must be absolutely incompatible with the innocence of the accused, incapable of explanation upon any other reasonable hypothesis than that of his guilt. (*Wills*, 171.) The jury ignored the humane safeguards of the law in their verdict.

2. The evidence of Whiting, tending to impeach defendant's witness, Tracy, was inadmissible. Tracy testified that he did not *remember* the conversation with Whiting, about which he (Tracy) was asked on cross-examination. With such an answer from a witness, it is not competent, for purposes of impeachment, to prove by another witness what conversation did take place. 5 *Ind.*, 502.

3. The charge to the jury, asked by the defendant, and by the court refused, embodied the law applicable to the case. The property must be found in the exclusive possession of the defendant before a presumption can be raised, on possession of the fruits of crime, that he is guilty. (3 *Greenl. Ev.*, §33.) The evidence offered, legally relative to the point in issue, no more than tended to prove constructive possession. The principal error in the instruction given consists in that part wherein the court charges that if the property be found in the *joint* possession of defendant, it is enough. No American case can be found to sustain this charge.

4. It was error for the court to allow the jury to separate, after the case was commenced. 1 *Kans.*,

332–3 ; 3 *Park. Cr. Cas.*, 48 ; *Wesley* v. *The State*, 2 *Humph.*, 502 ; *Peifer* v. *Commonw.*, 3 *Harris*, 468.

*Ryan*, for the appellee, submitted :

1. The evidence introduced under objection of appellant was admissible. *a.* To show that defendant had possession and control of the premises. Evidence here referred to is that which shows that he squatted on these premises ; that he was, apparently, the head of the family, all living there together ; that he, aided by his said sons and brother-in-law, cut the hay, built the circular and cone-shaped cabins, made the haystacks, built the stable and kept his horses in it and enjoyed the unrestricted use and occupation of the entire premises. *b.* To identify the defendant and convict him with the offense charged. The prisoner was seen on the back side of the field of Downey, under suspicious circumstances ; soon after, the potatoes were stolen, and afterward found on the premises occupied by him. These potatoes were among the articles found concealed on the premises when and where the property charged was found concealed. That is competent evidence of indentity. The reasonable inference is, that he who stole the potatoes concealed them ; that he who concealed them also concealed the property charged, and that he who concealed the property charged stole the same. The test of the admissibility of evidence of a larceny, other than the one charged, is whether there is any fact or circumstance connected with it having any connection whatever with the larceny charged. The other acts of larceny proven, also, tend to identify the prisoner and connect him with the offense charged, for the fruits of

them were found concealed on the same premises and at the same time. (*Roscoe's Cr. Ev.*) *c.* To show guilty knowledge. "On this ground evidence of other offenses of the same kind, committed by a prisoner, though not charged in the indictment, is admissible against him." (*Roscoe's Cr. Ev.*, 89.) "Possession of property recently stolen is but a circumstance from which a jury may or may not infer the guilt of the prisoner." (*Craft v. State of Kansas*, 3 *Kans.*, 486.) For such purpose, it is a general rule that where a person is found, at the same time, in the possession of a quantity of goods, recently stolen from different owners, on the trial of such person charged with the larceny of the goods stolen from one, evidence of the other stolen goods so found in his possession is admissible against him, to show his guilty possession of the goods charged. There could scarcely be more satisfactory circumstantial evidence of guilty knowledge. *d.* To show that the goods charged were stolen in pursuance of a combination between the prisoner and the other defendants, for the purpose of carrying on a general larceny business. If the prisoner was principal in the second degree, or accessory before the fact of the felony charged, he is guilty in the degree of a principal. (*Comp. L.*, 341, § 276.) If the prisoner either counseled, aided or abetted the commission of the offense charged, he may be tried and convicted in the same manner as if he were a principal. (*Comp.L.*, 251, § 101.) An accessory before the fact is one who, though absent at the time of the commission of the felony, doth yet procure, counsel, commend or abet another to commit such felony. (*Whart. Am. Cr. L.*, § 134.) The facts that the prisoner and the other defendants lived on the premises together as a family; that they

all participated in the construction of the haystacks, the interior cabins, the stable which they used in common; that the haystacks appeared to have been originally designed for the very purpose of concealing stolen property, and afterward actually used for that very purpose; that a great quantity of stolen goods were concealed in various places on the premises occupied by them—the garret of the house, the wagon-bed, the interior of all the haystacks, the manger of the stable, the woods near the house—tend to prove that all the larcenies were committed jointly by the defendants, and by mutually counseling, aiding and abetting each other in the commission of such offenses.

2. The court asked the prisoner's counsel, in the presence of the prisoner, if he was willing the jury should separate for the night, to which the counsel replied in the affirmative. It is claimed by the prisoner that the court erred in asking his counsel that question in the presence of the jury. It does not appear that he was prejudiced in any way by such separation. The practice of permitting the jury to separate, temporarily, at night and at their meals, by consent of the prisoner's counsel, obtains in nearly all the states. (1 *Arch. Cr. P.*, 631.) Permitting the jury to separate is a matter that rests in the sound discretion of the court. The proceedings prescribed by law in civil cases, in respect to keeping jurors together, shall be had upon trials for criminal offenses. (*Comp. L.*, 264, § 187.) In civil cases, it is in the discretion of the court to permit the jury to separate, temporarily, at night and at their meals. *Comp. L.*, 169, § 279.

3. The instruction asked by the prisoner's counsel, and refused by the court, was calculated to mislead the jury, for it required them to acquit unless his pos-

session of the property was exclusive. Surely, the prisoner might have a felonious possession of such property, in common with the other defendants, and be guilty of the offense charged. That was a matter for the consideration of the jury, in connection with all the other evidence in the case.

There is no error in the charge given by the court of which the prisoner can complain. The verdict is amply supported by the evidence. The law provides that "the jury shall be the exclusive judges of fact;" that is, where there is any testimony at all, upon a particular question, the jury must determine what that testimony proves. In that behalf, their power is exclusive and supreme. (*Craft* v. *State of Kas.*, 3 *Kas.*, 485.) Technical errors, which do not affect the substantial rights of the prisoner, will not be regarded. *Comp. L.*, 276; *Rice* v. *State of Kas.*, 3 *Kas.*, 171.

*By the Court,* KINGMAN, C. J.

The appellant was charged with larceny in Shawnee county; and, having been convicted, appeals to this court, alleging, as errors in this trial, the admission of improper testimony, the giving and refusing instructions, and the overruling of a motion for a new trial, because the verdict was not sustained by the evidence. The information was for stealing a set of double harness from John W. Surfis, of the value of fifty dollars. The testimony shows that the harness was stolen from Surfis, early in October, 1867, and was found, late in that month, in a haystack on the north side of the river, in Shawnee county. The testimony shows further, that the appellant, with his two sons, son-in-law, wife, daughter and daughter-in-law, and some children,

20

thirteen in all, squatted on the place sometime in August, 1867, occupying a cabin about twelve by fourteen feet, with a garret without stairs, most of them sleeping in wagon-beds near the house. The appellant was arrested, with his two sons and son-in-law, at the same time Surfis's harness was found. At that time there was, about fifteen rods from the house, a stable with haystacks on the north and south sides, so constructed as nearly to surround the stable. About one-half mile from the cabin was another haystack. The stacks were all so constructed that there was ready though hidden access to the interior of them, which was hollow. The cabin was half to three-fourths of a mile from any other habitation. Surfis's harness was found concealed in the haystack north of the stable; and on the day of arrest, and immediately afterwards, property was found concealed in each of the haystacks, under the manger of the stable, in the garret, in a wagon-bed, in the brush a short way off, and apparently wherever a hiding place could be devised. Most of this property was proved to have been stolen from citizens of the county. It was a curiously varied and motley assortment. To the introduction of all the evidence relating to property other than that charged in the information, the appellant objected. The testimony is voluminous. Its general character and tendency is stated above sufficiently to enable us to understand the objection.

The counsel for appellant insists that the evidence, improperly admitted, tended to prove a number of other distant offenses, committed by somebody, and that the State thereby attempted to charge the defendant with the larceny of the goods described in the information by incompetent testimony, because there

was no connection whatever between the larceny charged and the several other larcenies proved. The defendant's counsel cite Roscoe's Criminal Evidence, and numerous other authorities, as laying down this rule : "It is a general rule, both in civil and criminal cases, that the evidence shall be confined to the point in issue. In criminal proceedings, it has been observed that the necessity is stronger, if possible, that in civil cases, of strictly enforcing the rule ; for while a prisoner is charged with an offense, it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment, which alone he can be expected to come prepared to answer." We do not think the case at bar comes, necessarily, within this rule, as we shall show hereafter ; but the same author, on the same page (81), makes this modification, which is also found in all of the other treatises we have examined : "But where the evidence is referable to the point in issue, it will not be inadmissible, although it may incidentally apply to another person or to another thing, not included in the transaction in question, and with regard to whom or to which it is inadmissible."

In reference to these two rules, Mr. Wharton says : "It is important not to confound the principles on which these two classes of cases rest. On the one hand, it is admissible to produce evidence of a distinct crime, to prove a *scienter*, or to make out the *res gesta*, or to exhibit a chain of circumstantial evidence, in respect to the act charged. On the other hand, it is necessary strictly to limit the evidence to the exceptions, and to exclude it when it does not legitimately fall within their scope." *Wharton's Crim. L.*, § 650.

The testimony objected to was necessary to make out the chain of circumstantial evidence in respect to the act charged. Possession of the stolen property was shown to be in or among the four men arrested. Clearly, this was not enough to convict the appellant. Possession of stolen property, to authorize a conviction on that alone, must be recently after the theft —must be exclusive and unexplained. The State offered, as corroborating circumstances, the evidence to show the guilt of the appellant, as well as the others accused. They all came and squatted on the place together, all assisted in cutting the hay and forming the haystacks. Their relationship, their means of life, the variety of articles found secreted in various places on the premises, all tended to show a combination of effort on the part of all four to accomplish this purpose, and create in the mind a conclusive certainty that the possession of the property charged in the information could not have been innocent, and that the guilt was general. One reason would be the general knowledge men have that such an assortment would not be innocently gathered and secured, as that was in this case; and that general conclusion was only made a certainty by the proof that almost all of this property was identified as the property of many different persons—gleaned from a wide field. These were facts all throwing light upon and explaining the fact of possession, and render it morally certain that such possession can be referable only to a criminal origin, and cannot otherwise be rationally accounted for. It is one of the recognized marks of a guilty possession, that "other stolen property or pick-lock keys," or other instruments of crime, be found in the possession of the accused. *Wills on Crim. Ev.*, 74.

The testimony all showed a guilty knowledge and combination between the appellant and the others, to carry on a general stealing business, and was admissible to prove the appellant an accessory before the fact—counseling, aiding and abetting the others in the felonies, if not himself the actual perpetrator of the act charged.

As accessory before the fact, he was equally guilty under our statute, and might be found so on this information. *Comp. L.*, 252, § 101; 341, § 276.

The testimony was competent, not to prove another offense, but as circumstances to show the prisoner's guilt and guilty knowledge, in this case.

Another alleged error in admitting testimony is this : A short time before the trial, three of the persons escaped. Tracy, who was on guard at the time of the escape, was introduced for the defense. His testimony tended to show that the appellant had refused to flee at the time the other prisoners escaped, and that he had the same facilities for escaping that the others had. On cross-examination, he testified that he did not recollect having told Whiting, on the night of their escape, that appellant was sick and could not get out. Subsequently, Whiting was introduced as a witness by the State, and, against objection, testified that Tracy had, on that occasion, told him that defendant was sick and could not run.

It is contended that as Tracy had not denied making such statement to Whiting, the testimony of the latter was improperly admitted. We think otherwise. Tracy's testimony was intended to raise an inference of conscious innocence, by showing that the accused would not escape when he had an opportunity, and was positive that he had the same facilities that the

others had.   This would not be true if he were sick; therefore the testimony was relevant and admissible.

Had Tracy answered, "Yes," that would have been an end to the matter, for the state could only have proved what was admitted; had he answered, "No," then the counsel admit that Whiting's testimony was proper. In order to lay the foundation for introducing proof, the witness must be asked whether he ever said so and so, with particularity as to time and place, and occasion.

The object of this question is to give the witness an opportunity to explain, before he is impeached; this is the only reason he is asked the question.   If he answer affirmatively, the necessity for further testimony is superseded.   If he says he does not recollect, then you may give evidence on the other side, to prove that he did say what is imputed to him; and to that extent, the force of his testimony is weakened. If the rule were not so, you could never contradict a witness who said he could not remember.   2 *Phil. Ev.,* 435; 1 *Greenl. Ev.,* 606, *note.*

The case referred to in 5 Ind., is not very satisfactory.   The facts are not fully stated, nor is any reason given or authority advanced for the decision.   It was, perhaps, based upon the peculiar phraseology of the bill of exceptions.   At any rate, the rule and the reason are both against that decision, as the counsel understand it.

The next point in error is, in instructions refused and given.   The instruction refused, referred to, is in the exact language of the first part of § 33, vol. 3, of Greenleaf on Evidence, and is to the effect that to raise a presumption of guilt from the possession of stolen property, or the fruits of crime, they must be in the

exclusive possession of the accused. That if others, as well as the prisoner, had access, it would not be right to permit such presumption on proof of possession alone. This is, in our opinion, good law. But the appellant has no right to complain of its refusal because the court instead instructed the jury on this point, that the law does not infer guilt from the exclusive possession of the articles alleged to have been recently stolen, but that that fact must, with others, go to the jury, under the rules governing circumstantial evidence; but before the jury are authorized to presume the fact of guilt, from the possession of said articles alleged to have been stolen, they should be satisfied from the evidence that the said articles were recently stolen, and that the defendant was found either in joint or exclusive possession thereof. This instruction given was quite as favorable to the accused as the one refused, and was more applicable to the case, because the State had not, by any means, rested the case on possession of the stolen property alone, but had added a long array of corroborative testimony.

If the prosecution rests the case on possession of the fruits of crime alone, then the possession should be absolute and exclusive, when one alone is charged with the offense; but when others are charged with the same offense, and other proof comes in, as in this case, proof of a joint possession may be sufficient. It is but one among the many items of testimony, and it was proper to refuse an instruction, although it was law, that was not applicable to the facts proved, and substitute one that did apply. The jury were substantially told that possession was a fact, like any other fact to be weighed by the jury, and in this case, that was a proper instruction.

Another cause of error is that the jury were allowed to separate during the progress of the trial, and before the cause was submitted to them.    As the law authorizes such separation, upon proper admonition, we cannot interfere.    It is not like the case in 1 Kans., 351–4. (*Madden* v. *The State*.)    There the separation was after the cause was submitted, and the separation prohibited by law.

We are of opinion that the verdict was abundantly sustained by the evidence, as has been indicated in previous portions of this opinion.

We find no error in the record that will justify us in disturbing the judgment of the court below.

All the justices concurring.