· THE STATE OF KANSAS v. SAMUEL A. JOHNSON.

### No. 530.

1. GRAND JURY—*irregularity in selecting, not amounting to corruption, not ground for quashing indictment.* A motion to quash an indictment for irregularities in the selection and proceedings of the grand jury which returned it, can only be sustained, under paragraph 5144, General Statutes of 1889, when such irregularities, in the opinion of the court, amount to corruption ; and where the evidence upon that question is conflicting, the judgment of the court below will not be disturbed.

2. RECEIVING DEAD BODY—*elements of crime of, what are.* Besides the formal matter of venue, etc., to lawfully convict the defendant in this case, it was necessary for the jury to have found from the evidence, beyond a reasonable doubt, only the following facts : *First,* that the described body was unlawfully removed from its grave for the purpose of dissection, and *second,* that the defendant received the body knowing that it had been so unlawfully removed for such purpose, or knowingly aided, counseled, abetted, or assisted some other person or persons in so doing.

3. POSSESSION OF FRUIT OF CRIME—*unexplained, evidence of guilt; applies to person receiving as well as taking; need not be exclusive.* The unexplained possession of the fruit of crime, recently after its commission, is *prima facie* evidence of guilty possession, and this rule applies equally to a person charged with receiving and to one charged with taking it ; and such possession need not be exclusive, but may be a joint possession, and may, in connection with other circumstances, justify a conviction.

4. GOOD CHARACTER—*proof of defendant's, does not in law remove presumption from possession of fruit of crime; weight of, for jury.* It was not error for the court to refuse to give to the jury an instruction which was, in substance, that the proof of the good character of the defendant completely removed the presumption of guilt arising from the possession of the stolen body. It was the duty of the jury to consider the evidence upon each of these subjects, and give it such weight as they thought it entitled to under all the circumstances of the case.

5. INSTRUCTION—*assuming as fact, material, controverted question, error.* It is reversible error for a court to assume as a proven fact a material, controverted question, and, under such assumption, to instruct the jury as to their duty.

120 THE STATE v. JOHNSON.

N. Dept.          Opinion.   Wells, J.          6 Kan. App.

Error from Wabaunsee District Court. Hon. William Thomson, Judge. Opinion filed November 5, 1897. *Reversed.*

*L. C. Boyle*, Attorney General, *A. P. Jetmore*, County Attorney, and *H. B. Jones*, for the State.

*Ferry & Doran*, for appellant.

WELLS, J. This action was originally instituted in the District Court of Shawnee County, on February 20, 1896, by the return of an indictment against the appellant, charging him with having unlawfully and knowingly received the dead body of one, Amelia Van Fleet, which had been removed from its grave for the purpose of dissection. On the same day the appellant was arrested and gave bond for his appearance at the next term of court. On August 3, 1896, a change of venue was granted, on the application of the defendant, to the District Court of Wabaunsee County, where the matter was continued until February 2, 1897, when a motion to quash the indictment was heard and by the court. overruled. The next day the case was tried before a jury, which rendered a verdict, February 18, 1897, finding the defendant guilty. After the hearing and overruling of several motions, the defendant was, on March 25, 1897, sentenced to pay a fine of five hundred dollars and the costs of the action, and to be committed to the county jail until such costs and fine were paid. A bill of exceptions was allowed by the court, and an appeal taken to this court. There are seven specifications of error, and we shall consider them in the order presented by the appellant.

It is said the court erred in overuling the motion

1. Irregularity in selecting grand jury not reversible error.

to quash the indictment, filed by the defendant. For the reasons given in *The State v. Lowe* (ante, p. 110), which is a companion case to this one, we cannot regard this as error.

The second assignment of error concerns the admission of improper evidence. The first evidence complained of as improper was in relation to the condition of the bodies found in the dissecting room of the Kansas Medical College. The appellant argues that this did not relate to the case, and was intended to prejudice the jury by insinuations as to other crimes. This evidence was brought out in the recital of the facts connected with the search that led to the discovery of the body of Mrs. Van Fleet, and was proper to make out the *res gestæ*, or to exhibit a chain of circumstances. See *Lewis v. State*, 4 Kan. 296.

The next evidence objected to was as to the appointment of a committee by the faculty of the Kansas Medical College to look after material for dissection, and this evidence was asked to be stricken out as not the best evidence. We think that, generally, a person who is present when a thing is done is a competent witness to prove what was done ; and his evidence is better than any minutes, as minutes may fail, by accident or design, to contain a record of all that was done. Other questions were asked for the evident purpose of showing that the mutilated and disfigured condition of bodies, such as those found in this institution were in, would be presumptive notice to the party receiving them that they were not proper subjects for dissection ; and evidence of this fact, if it was a fact, would have been proper. But the plaintiff in error says that, while this evidence would have been proper if there had been any evidence that the

122      THE STATE v. JOHNSON.

N. Dept.        Opinion.   Wells, J.        6 Kan. App.

bodies were in this condition when received, there was no such proof, and the evidence should have been stricken out; and cites *Martin v. Williams* (40 Kan. 153). We are not referred by counsel to any request to strike out this testimony after the evidence was all in and such failure appeared, and in the absence of such a request, it would not be reversible error not to do so, under the authority last cited.

The other questions are objected to upon the ground that they were attempts upon the part of the prosecution to impeach its own witnesses, no foundation being laid therefor. In this connection we are referred to the case of *The State v. Keefe* (54 Kan. 197). We do not think that these questions come within the rule there laid down. While "the State has no right to impeach the general character for truth and veracity of one of its witnesses," it has the right, when a witness testifies differently from what was expected, to call his attention to the matter of difference and get his explanation thereof; and that was as far as the matter went in this case. We see no reversible error under the second assignment.

The third assignment of error concerns the refusal to instruct the jury to return a verdict in favor of the defendant. This assumes that there was not sufficient evidence presented to the jury to authorize it to return a verdict of guilty, and necessitates a careful review of all the evidence in the case. That the body of Amelia Van Fleet was unlawfully taken from its grave, after its burial on Sunday evening, December 8, 1895, and was found the next day in the Kansas Medical College, with its face disfigured and mutilated beyond recognition, there is no question. That the defendant Johnson was the janitor of such building and in the immediate charge thereof, is abun-

THE STATE v. JOHNSON.                123

Nov. 5, 1897.          Opinion.   Wells, J.          E. Div.

dantly proven. That the person who received the body on behalf of the medical college had reason to believe that it was unlawfully procured, is sustained by the evidence of its mutilated condition or its hurried disfigurement, and removal to the small room where it was found. On the part of the appellant it is claimed that his possession was not exclusive, but that it was subject to the direction of the faculty; that Duncan, Amos and Alkire had keys to the outside door; that Alkire and Martin had keys to the dissecting room; that keys to these rooms were kept about the house; and, finally, that these locks could be and were picked. In answer to this it may be said that the evidence of Duncan shows that he and Amos were together that night until twelve or one o'clock, and that they knew nothing of the reception of the body. Martin testified that he had nothing to do with the reception of the body and never saw it. Alkire testified that he was a member of the faculty and one of the trustees, and was never present when a body was received. McClintock testified that he was one of the trustees and a member of the faculty, but that he never took in but one body for the college and that was a legitimate subject. McVey testified that he was secretary of the college and never saw any material taken in. J. E. Minney testified that he was dean of the faculty, and one of the trustees and owners of the property, and that he had no key to the building or dissecting room. C. S. McClintock was demonstrator of anatomy, but never procured any material for dissection, did not know how material got into the building, and did not know who furnished material. After the body was found, Doctor Minney stated, in the presence of the appellant, that the appellant was in charge of the building and staid there at night, and that he would probably know something about how

124          THE STATE v. JOHNSON.

N. Dept.          Opinion.   Wells, J.          6 Kan. App.

the bodies got there. To this Johnson gave no explanation.

To lawfully convict the defendant, it was necessary for the jury to have found from the evidence, beyond a reasonable doubt, the following facts : *First*, that the body of Amelia Van Fleet was unlawfully removed from its grave for the purpose of dissection ; *second*, that the defendant received the body knowing that it had been so unlawfully removed from its grave for such purpose, or knowingly aided, counseled, abetted, or assisted some other person or persons in so doing. About the first proposition there is no question. The second proposition, beyond the undisputed fact of the presence of the body in the building of which the defendant had the immediate control, can, in the nature of things, be proven only by circumstantial evidence ; and the question is, Did the facts in evidence in this case justify the jury in finding that the defendant received, or assisted others in receiving, the body, knowing it to have been unlawfully disinterred for such unlawful purpose? As before remarked, there is sufficient evidence to justify the jury in finding that whoever received the body into the college knew that it was not lawful material, and we will not refer to that point again. We shall consider only the question, Did the jury have evidence before them upon which they were justified in finding that the appellant received, or assisted in receiving, the body?

That possession of the fruit of crime recently after its commission, is *prima facie* evidence of guilty possession, is a well-settled principle of law, and if unexplained is taken as conclusive. See 1 Greenleaf on Evidence, § 34. But the appellant says, *first*, that this possession must

*2. Receiving dead body, elements of.*

*3. Possession of fruit of crime, presumption from, considered.*

be exclusive, and *second*, that this presumption does not apply in the case of a person charged with receiving the property knowing it to have been stolen. In answer to this we say that the rule that the possession must be exclusive applies only to the case of a conclusive presumption, upon which, alone, a verdict of guilty may be found. This is not the case here. There are other circumstances tending to show the guilt of the defendant, not the least of which was his failure to make any explanation as to the presence of the fruit of the crime, when his attention was specifically called to the fact by the statement of the dean that he was in charge and would probably be able to give some explanation. In regard to the second objection, we have hereinbefore shown that no such presumption was necessary to show the knowledge of the party receiving the body, that it had been stolen. We cannot agree with the counsel for the appellant that "the State would have to prove that the other roomers in the building did not take the body into it; it would be compelled to prove that each one of the students attending the medical college that year, did not take the body into it; it would be compelled to prove that no member of the faculty took the body into the building, before even a *prima facie* case would be made out against the defendant." We think there was sufficient evidence in this case to authorize a verdict of guilty, and the request of the defendant to instruct the jury to return a verdict of not guilty was properly refused.

The only other allegations of error necessary for us to consider are the fourth and fifth, and refer to the instructions refused and the instructions given. We will discuss them together. The following instruc-

126 THE STATE v. JOHNSON.

N. Dept. Opinion. Wells, J. 6 Kan. App.

tions were asked by the defendant and refused by the court:

"2. Before the defendant can be found guilty of receiving the dead body so as to make him liable under our statute, it must be proven beyond a reasonable doubt that the body was a stolen body, and that the defendant received it with the intent to conceal it and the thief who stole it, and that the defendant knew that the body was a stolen body at the time he received it.

"3. In order to raise the presumption of guilt from the mere possession of the body, in case you find the defendant had such possession, it is necessary that it be found in his exclusive possession. If the stolen body was found in a room or building owned or occupied as well by others as by the defendant, or in a place where others had equal facility or right of access, there is no reason why he, rather than they, should be charged upon this evidence alone. In this action this defendant is the only one charged with receiving this particular body, and I instruct you that to raise a presumption of his guilt you must find from the evidence that the body was not only in his possession, but that such possession was absolute and exclusive. In other words, I instruct you that, if the body was found in a room or building occupied or owned by others than the defendant, or to which others than the defendant had equal facility and right of access, then there is no presumption that the defendant, rather than the others, received the body. And if such facts stand alone, unsupported by other incriminating evidence or circumstances, you must acquit the defendant.

"4. I further instruct you that in case you find that the defendant had the absolute and exclusive possession of the body, then the presumption of guilt arising from that possession is completely removed by the good character alone of the prisoner, if such good character is proved."

THE STATE v. JOHNSON.                127

Nov. 5, 1897.          Opinion.   Wells, J.                E. Div.

The following instructions were given by the court, over the objection of the defendant:

"6. Where the verbal admission of a person charged with crime is offered in evidence, the whole of the admission must be taken together, as well that part which makes for the accused as that which may make against him; and if the part of the statement which is in favor of the defendant is not disproved, and is not apparently improbable or untrue, when considered with all other evidence in the case, then such part of the statement is entitled to as much consideration from the jury as any other part of the statement.

"7. The rule of law which throws around the defendant the presumption of innocence, and requires the State to establish beyond a reasonable doubt every material fact averred in the indictment, is not intended to shield those who are actually guilty from just and merited punishment, but is the humane provision of the law which is intended for the protection of the innocent, and to guard, so far as human agencies can, against the conviction of those unjustly accused of crime.

"8. You are further instructed that the statutes of Kansas provide that any one who knowingly aids, counsels, abets or assists another in the commission of crime, is himself guilty of its commission, and may be charged, tried and convicted the same as if he alone had been the perpetrator of the offense; so, if you believe from the evidence, beyond a reasonable doubt, that the crime alleged in the indictment was committed by some person or persons different from the defendant, and that the defendant knowingly aided, counseled, abetted or assisted such person or persons in so doing, you will find the defendant guilty as charged.

"9. You are further instructed that one of the essential allegations in the indictment is that the defendant received said body of Amelia Van Fleet; and concerning this you are informed that to have received the body is to have taken or acquired possession of the

128 THE STATE v. JOHNSON.

N. Dept. Opinion. Wells, J. 6 Kan. App.

same, or exercised direction or control over the same, after its disinterment, by transfer from some one else, and this may be done either exclusively by the defendant or knowingly in conjunction with others ; and if you believe from the evidence, beyond a reasonable doubt, that the said defendant did acquire, by transfer, control over said body, or exercised acts of possession over the same, by transfer from some one else, either by himself or in conjunction with others, or knowingly aided, counseled, abetted or assisted others in so doing, then you will consider the fact of the receiving of said body by the defendant established in this case.

" 10. You are further instructed that another essential fact in this case is that the defendant, if he received said body, knew at the time that the same had been removed from its grave for the purpose of dissection without the consent of the near relatives of the said Amelia Van Fleet, and this knowledge must be shown in him beyond a reasonable doubt ; but this knowledge may be shown, as any other fact, by either direct or circumstantial evidence, and you will be permitted to find such fact exists if you believe that the defendant at the time knew the fact itself, or of such facts or circumstances as should have convinced the defendant, situated as he then was, of the existence of such fact."

" 18. The acts of men are presumed to be legal until the contrary is shown. There is a legal manner of obtaining dead bodies for the purpose of dissection, and all the bodies obtained for that purpose are presumed to be legally obtained until the contrary is shown, and the mere finding of a dead body in a dissecting room, provided that body is found in a condition in which bodies are usually found in such places, is not of itself sufficient to raise a suspicion in the mind of any one that it is a stolen body. The mere fact that the defendant saw this body in the dissecting room, raised no presumption that it was a stolen body, unless there were attendant circumstances which would raise in any reasonable mind a suspicion that

the body thus seen was a stolen body, or unless the condition of the body was such as to arouse in any reasonable mind a query as to whether or not the body so seen was a stolen body.

" $18\frac{1}{2}$. The court instructs the jury that evidence of previous good character is competent evidence in favor of the party accused, as tending to show that he would not be likely to commit the crime charged against him ; and in this case, if the jury believe from the evidence that, prior to the commission of the crime, the defendant had always borne a good character for being law abiding, among his acquaintances and in the neighborhood in which he lived, then this is a fact proper to be considered by the jury, with all the other evidence in the case, in determining the question whether the witnesses who have testified to facts tending to criminate him have been mistaken, or have testified falsely or truthfully ; and if, after careful consideration of all the evidence in the case, including that bearing upon his previous good character, the jury entertain a reasonable doubt of the defendant's guilt, then it is your sworn duty to acquit ; but if, considering all the evidence, including that of previous good character, you believe beyond a reasonable doubt that the defendant committed the offense, it is equally your sworn duty to convict."

" 20.  In conclusion, gentlemen of the jury, I urge upon you to weigh well the evidence before you, and ponder upon these instructions now given, that you may not, perhaps, by careless disregard of your responsibilities, fail in conserving the rights of society on the one hand, or on the other condemn to punishment one who may have done no wrong. ·Courts are only respected when there is an earnest desire and true endeavor on the part of all their officers to do right ; any departure from this justly arraigns the law tribunals for inefficiency, and excites a public disregard and contempt for their decrees.  Neither passion nor sympathy should swerve or sway, but you should keep as certainly to the course pointed out by impartial justice as the needle is faithful to the

9—6 KAN. APP.

**130**       THE STATE v. JOHNSON.

N. Dept.                Opinion.   Wells, J.              6 Kan. App.

pole; thus only shall you escape an accusing con-
science, and redeem the oath-bound obligations as-
sumed by each of you at the time you were chosen to ·
hear attentively, to consider wisely, and to determine
justly.''

The law in relation to what facts must be found by
the jury before they could find the defendant guilty,
was correctly given in instruction number nineteen,
and the only thing in the defendant's instruction
number two, which was refused, not embodied in
number nineteen, was the necessity of intent on the
part of the defendant to conceal· the body and the thief
who stole it.   This is not the law.   The only intent
necessary to have been found was the intent that the
body should be unlawfully. used for the purpose of
dissection.

The next contention is the one hereinbefore dis-
cussed, as to the necessity of exclusive possession
being found in the defendant.   The law was correctly
given in instruction number nine, and number three
asked by the defendant was properly refused.   The
law on this subject, as approved in *State v. Lewis*
(supra, 311) is :  "Before the jury are authorized to
presume the fact of guilt, from the possession of said
articles alleged to have been stolen, they should be
satisfied from the evidence that the said articles were
recently stolen, and that the defendant was found
either in joint or exclusive possession thereof."

Instruction number four, asked by the defendant
and refused by the court, was, in substance, that the
4. Defendant's good  proof of the good character of the de-
character, effect    fendant completely removed the pre-
of proof of,
for jury.            sumption of guilt arising from the
possession of the stolen body.   We do not think that
this is the law.   We do think the law was correctly

given by the court in number eighteen and a half.
It was proper for the jury to consider the evidence on
each of these subjects and give it such weight as they
thought it entitled to.   See *The State v. Keefe*, supra;
*The State v. Douglass*, 44 Kan. 618; 3 Am. & Eng.
Encyc. of Law, 110.  We think that counsel for the de-
fendant are mistaken in saying that there was no evi-
dence to which instruction number six, given by the
court, could apply; for there was evidence of admis-
sions tending to show possession, as each of the three
officers who searched the building at the time the
body was found and the defendant arrested, testified
to admissions made by Johnson that he was in charge
of the building.   This instruction was properly given
in relation thereto.

We do not think that instruction number seven is
justly subject to the criticism made on it by the ap-
pellant, and it seems to us no more equivalent to say-
ing, "The defendant is guilty, and therefore you must
not give him the benefit of these instructions," than
it was to saying, "The defendant is innocent and un-
justly accused of crime, and you must apply these in-
structions to his case and acquit him."   Neither of
these conclusions is warranted by anything contained
in the instruction.   Instructions number eight and
nine are correct statements of the law, and apply to
the evidence in this case.

Instruction number ten is open to criticism for the
loose use of the word "fact," to denote the thing or
proposition requiring proof.   But this use of the word
is sanctioned by good authority, and in the connection
in which it was given it could not have misled the jury.
We also think that this instruction would have been
better had the court inserted the words "from the
evidence" after the word "believe," in the latter part

132     THE STATE v. JOHNSON.

N. Dept.       Opinion.   Wells, J.       6 Kan. App.

thereof; but as the court, in instruction number five, had told the jury that they must determine this case upon the law as given to them by the court and upon the evidence as they heard it from the witness stand, we do not think that this was reversible error.

It does not seem to us that appellant's criticism of instruction number twenty is just. On the contrary, considering the circumstances surrounding the trial, it seems to have been timely and wise to seek to impress upon the minds of the jurors, if possible, a clear conception of their duty and responsibility; and we do not think that the manner in which this was attempted to be done was either unreasonable or uncalled for.

There now remains for our consideration only instruction number eighteen, given by the court, and we cannot escape the conclusion that the giving of this was reversible error. While it was probable that the court, in giving this instruction, did not intend to say that the defendant actually saw the body, but only used it as a suppositional case, upon which they needed instructions if they found it to exist as a fact, yet the language was such as to naturally convey to the jury the impression that the judge thought it was a fact and intended to so instruct them, and, as such, is reversible error. See *Horne v. State of Kansas*, 1 Kan. 42; *Boughman, Sheriff, v. Penn*, 33 id. 504; *Railway Co. v. McClure*, 58 id. 109, 48 Pac. Rep. 566.

5. Instruction assuming as fact controverted question, error.

The motion for a new trial should have been granted for this cause alone. The judgment of the court below is reversed and a new trial ordered.

MAHAN, P. J. (concurring specially). I concur in the conclusion reached by the court—that is, that the

judgment should be reversed, and for the reason given. And I am further of the opinion that instruction number six was improperly given, as it in effect said that the defendant had made admissions of material facts necessary to his conviction. There are no such admissions in the record, in my view of the case. In this, too, number seven was likewise erroneous. It is a clear intimation to the jury that the defendant's case might be said to be such a one that he might not be entitled to the presumption of innocence; and to this presumption every defendant put upon trial for a crime is entitled, without qualification or restriction, as an absolute, full and free presumption, without the power of the court to in the least modify or limit it. And this instruction was so prejudicial in its necessary bearing on the minds of the jury as to reverse the judgment, in my view of the law.