No. 47,306

STATE OF KANSAS, *Appellant,* v. EUSEBIO MONTANEZ, *Appellee.*

(523 P. 2d 410)

Opinion filed June 15, 1974.

*James W. Morrison,* county attorney, argued the cause, and *Vern Miller,* attorney general, and *Paul E. Miller,* assistant county attorney, were with him on the brief for the appellant.

*Richard H. Seaton,* of Everett and Seaton, of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by the state on a question reserved in a prosecution for the unlawful sale of hashish. The state's only witness as to the alleged sale upon cross-examination invoked his privilege against self-incrimination and refused to answer whether he had illegally sold drugs. The trial court then ordered the witness' direct testimony stricken. The state being unable to

prove its case, the defendant was discharged and this appeal ensued.

Trial was to the court. The witness, Michael Stewart, who was paid by the hour by the Manhattan police department for his time spent as a "cooperating individual" upon seventeen or eighteen occasions of drug purchases, testified upon direct examination that upon the evening in question he went to a house at 527 Yuma in Manhattan to buy hashish from defendant Eusebio Montanez. Stewart had first met Montanez that afternoon when he went to the same house to purchase drugs from another person. Immediately prior to going to the house that evening he had been searched by a police officer and given currency with which to make the "buy," in accord with standard police practice, and had been let out of an unmarked police vehicle parked where the house could be viewed. Stewart testified he entered the house and bought one-fourth ounce of hashish from defendant. The only other individual present was a person asleep in the room whom the witness did not know and could not identify. Immediately after the purchase Stewart returned to the parked police car and was again searched and relieved of his purchase.

Upon Stewart's cross-examination by defendant the following testimony was given:

"I was paid $2.00 per hour by the police department. The purpose of my employment was to make drug buys. I started working in the police department when a burglary was committed in my apartment building and Sergeant Woodyard asked me about it. I was charged with sale of marijuana in September of last year. The case was dismissed. I do not know why. I was informed by my lawyer that the charges had been dismissed. I did not go to court and never discussed the dismissal of the charges with the prosecutor's office. I don't know what my attorney did. I have never been convicted of a crime other than fishing without a license. I have been court-martial by the Army for disrespect to an officer and AWOL in November of 1970 at Fort Riley.

"Q. Have you ever used illegal drugs?

"A. Yes, sir I have.

"Q. Which ones?

"A. I think I have come in contact with everyone, as far as use is concerned, at least once.

"Q. You have used everything that you know about?

"A. Yes, sir at least once, just to see what it was.

"Q. Can you give us a list?

"A. Marijuana, Hashish, LSD, Mescaline, Speed, Cocaine, Heroin, anything at least once.

"Q. Have you ever sold illegal drugs?

"A. I would have to take the Fifth Amendment on that sir."

In the ensuing discussion between court and counsel upon defendant's motion to strike Stewart's direct testimony it was shown that the same witness at defendant's preliminary examination had balked at answering defendant's questions whether he had used or sold drugs in the past. After defendant was bound over to district court but prior to trial defendant brought the matter of Stewart's refusal to testify to the attention of the trial court but no ruling was made. Thereafter it appears the state granted Stewart immunity from prosecution for any possession of drugs but not for sale. During the colloquy counsel for both sides agreed, as they do here, that Stewart had the right under the fifth amendment to the federal constitution to refuse to answer the question. Counsel for the state repeated the refusal to grant immunity for any sale of drugs. After receiving briefs the trial court sustained defendant's motion to strike Stewart's direct testimony on the ground his refusal to answer the question put to him on cross-examination deprived defendant of his sixth amendment right of confrontation. In making its ruling the trial court expressed concern with the direction further cross-examination might have taken as bearing on the witness' motivation in testifying. The state's case having collapsed since Stewart was its only witness to the alleged hashish sale, the trial court then sustained defendant's motion for acquittal and ordered his discharge.

The state contends the trial court erred in ruling that defendant's sixth amendment right to confront was paramount to the witness Stewart's fifth amendment right against self-incrimination and it asserts the latter's testimony should not have been stricken.

The sixth amendment right of an accused to confront the witnesses against him is a fundamental right made obligatory upon the states by the fourteenth amendment to the federal constitution (*Pointer v. Texas,* 380 U. S. 400, 13 L. ed. 2d 923, 85 S. Ct. 1065). It is likewise embraced in our state constitution (Kan. B. R. 10). Included in it is the right to cross-examination of the witnesses (*Smith v. Illinois,* 390 U. S. 129, 19 L. ed. 2d 956, 88 S. Ct. 748). At the same time, a witness has a fifth amendment privilege against self-incrimination, a right likewise obligatory upon the states as an element of due process (*Malloy v. Hogan,* 378 U. S. 1, 12 L. ed. 2d 653, 84 St. Ct. 1489). What about a situation where both rights are asserted? There is no necessity for resolution of the problem by weighing each in the scales. Each can be respected and protected. Generally it may be said a trial court is required to protect an accused's right of confrontation short of compelling the witness

against him to abdicate his privilege of self-incrimination (*Alford v. United States*, 282 U. S. 687, 75 L. ed. 624, 51 St. Ct. 218). Where the assertion of the privilege against self-incrimination prevents effective confrontation of the witness by the accused the situation is remedied by striking the testimony of the witness (5 Wigmore on Evidence, 3d ed., § 1391, p. 112). Two inquiries become pertinent where both rights are asserted. The first is whether the witness has properly invoked his privilege against self-incrimination. It must be kept in mind that if on direct examination a witness testifies to incriminating matters he is considered to have waived the privilege as to those items and he may not, on cross-examination, decline to answer questions concerning that which he has already revealed (98 CJS, Witnesses, § 456, p. 313). Here the witness Stewart on direct examination made no mention of illegal drug sales by himself, he had not been granted immunity and it appears, as the parties have concluded, that the witness properly invoked the privilege.

Once it is determined the privilege is properly invoked the second question is whether this restriction on his cross-examination necessitates the striking of the witness' direct testimony. The ultimate inquiry is whether the defendant has been deprived of his right to test the truth of the direct testimony. If he has, so much of the direct testimony as cannot be subjected to sufficient inquiry must be struck. A distinction has generally been drawn between invoking the privilege as to "collateral" matters, where striking of the direct testimony is not required, and invoking it as to "direct" matters (*Fountain v. United States*, 384 F. 2d 624 [CA5, 1967], cert. den. *sub nom. Marshall v. United States*, 390 U. S. 1005, 20 L. ed. 2d 105, 88 S. Ct. 1246).

Illustrative of the problems sometimes presented are the rulings made in *United States v. Cardillo*, 316 F. 2d 606 (CA2, 1963), cert. den. 375 U. S. 822, 11 L. ed. 2d 55, 84 S. Ct. 60, prosecutions of six persons for interstate transportation and receipt of stolen furs and conspiracy to do the same. Trial was to the court. Prosecution witness O upon his cross-examination by defense counsel refused to answer several questions relating to prior criminal activity unrelated to the crime at issue. His direct testimony was permitted to stand. The defendants were convicted and upon their appeal the court stated this upon the challenge to witness O's testimony:

"Since the right to cross-examine is guaranteed by the Constitution, a federal conviction will be reversed if the cross-examination of government wit-

nesses has been unreasonably limited. [Citations] However, a reversal need not result from every limitation of permissible cross-examination and a witness' testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. [Citations] On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part [Citations]." (p. 611.)

The appellate court concluded no error was committed in the trial court's reception of the witness' entire testimony. However, different treatment was accorded the testimony of another prosecution witness who likewise balked on cross-examination in the same case. Witness F refused on fifth amendment grounds to reveal the source of five thousand dollars which according to his direct examination he had given to one defendant to use in purchasing the stolen furs. The trial court refused to strike F's testimony, which comprised practically the entire case against two of the defendants. After stating the various possibilities whereby the defendants might have benefited from the disclosure called for, the appellate court stated:

"This is not to say that every refusal to answer by a witness, claiming his constitutional right against self-incrimination, requires the striking of his testimony or a part thereof. There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose. As to the first and second categories suggested, whether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury

of reflective appellate deliberation, any set of specific dogmas would be even more unworkable.

"In this case, despite the original claim that his proposed cross-examination related to 'credibility,' it was not the type of testimony that would have developed the general unsavory character of the witness as might questions dealing with prior convictions. The answers solicited might have established untruthfulness with respect to specific events of the crime charged. It is in this field that the decisions appear to call for the striking of testimony. The ground given is not so much that credibility is involved but that refusal to answer thwarts a fundamental right of the defendant to cross-examine his accusers. The refusal of [F] to answer falls into this category and for this reason the judgments of conviction against Harris and Kaminsky must be reversed." (p. 613.)

The real thrust of the foregoing seems to be that general credibility of a witness is a "collateral" matter wherein the testimony need not be stricken, while bias, interest or motive of a witness suggested by his examination in chief is a "direct" matter, requiring a striking in the event he invokes his fifth amendment privilege upon cross-examination. In *Fountain v. United States,* supra, the court in the following articulated the practical difficulty which may arise in drawing the distinction when these molds are used:

"But the line between 'direct' and 'collateral' is not clear, and the question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." (p. 628.)

The difficulty is compounded by the fact the term "collateral" is not always used with precisely the same significance in all phases of the law of evidence (see 5 Wigmore on Evidence, 1972 Supp., § 1391, p. 29).

Bias, interest or improper motives of a witness may always be shown in order to place his testimony in proper perspective (*State v. Pierson,* 202 Kan. 297, 301, 448 P. 2d 30). Only recently in a confrontation case the federal supreme court iterated its recognition that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination (*Davis v. Alaska,* _____ U. S. _____, 39 L. ed. 2d 347, 94 S. Ct. 1105).

The case at bar is a close one. The state contends the question propounded to the witness went purely to a collateral matter—his credibility. Defendant points out the testimony revealed the witness, a paid informant and one whose testimony was crucial to the prosecution, had only recently been charged in Manhattan with the sale of marijuana, which charge had for unknown reasons been dropped

and that further examination might disclose an improper interest or motive for testifying against defendant in hope of escaping prosecution for more serious drug offenses than those upon which he had been granted immunity. Defendant also suggests other possibilities of Stewart's involvement in the narcotic traffic which might be revealed as redounding to defendant's benefit but we think it unnecessary to go into those. The question to the witness, an admitted violator of the law, was preliminary in nature and answer to it might well have led to further disclosures casting doubt on his prior testimony. In this connection the admonition of Mr. Justice Stone in *Alford v. United States,* supra, bears repeating:

"Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. [Citations] It is the essence of a fair trial that reasonable latitude be given to the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. [Citations] To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial." (p. 692.)

As indicated, the ultimate test in each case in determining whether the testimony of a witness who has thwarted cross-examination by invoking his privilege against self-incrimination must be whether the defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness' direct testimony (*Fountain v. United States,* supra).

Applying the foregoing, a majority of the court is inclined to agree with defendant's contentions. The question upon which the witness invoked his privilege against self-incrimination involved more than mere general credibility and was sufficiently within the scope of his prior testimony that defendant was entitled to have it heard and pursued further in support of his position he was not guilty of the crime charged. We cannot say the state has made it appear the trial court abused sound discretion in striking the witness' entire testimony.

The appeal of the state is not sustained.

APPROVED BY THE COURT.

FONTRON, J., dissents.