No. 48,999

STATE OF KANSAS, *Appellee*, v. EDWARD J. BERRY, *Appellant*.

(575 P 2d 543)

Opinion filed February 25, 1978.

*John D. Clark,* of Wichita, argued the cause and was on the brief for the appellant.

*J. Larry Linn,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Edward J. Berry was convicted of murder in the first degree (K.S.A. 21-3401) and aggravated robbery (K.S.A. 21-3427). The victim was a taxi driver, Gwen Dopps, who had been advised to pick up a cab fare at Hawk's Pharmacy in Wichita in the early morning hours of September 13, 1976. Gwen Dopps stopped at the pharmacy and picked up a man and a woman who gave her their destination. On arrival at that destination the man and woman got out of the taxi and the man approached the driver on the left side of the vehicle. He drew a hand gun, demanded money, then shot Gwen Dopps in the head. The two passengers fled the scene. Witnesses came to the aid of the victim and she

was rushed to a hospital. Her billfold and some currency were found on the ground at the scene of the crime. The woman passenger turned out to be Barbara Harris who pled guilty to criminal charges. She testified for the prosecution. Gwen Dopps was in the hospital for approximately 30 days and seemed to be recovering when suddenly she died. The doctor who conducted an autopsy on the body testified that death was caused by a gunshot wound in the head which activated a vagus nerve. This brought about a stress ulcer which started severe hemorrhaging in the small intestine. The resulting loss of blood brought about the death. Other facts will be developed in examining the two points raised in this appeal.

Eight days after Gwen Dopps was shot and six days before the complaint was filed two detectives of the Wichita Police Department talked to the victim when she was in the hospital. At the trial, after a hearing before the judge, the detectives were permitted to testify as to what Gwen Dopps told them about the incident. The appellant assigns this as error because her statement was admitted under an exception to the hearsay rule, and he alleges the conditions for allowing the admission were not met.

Detective Rummery testified that he talked to Gwen Dopps on September 21, 1976, in Room 333, Building 4 of Wesley Hospital. On entering the room Detective Rummery identified himself and told Miss Dopps that he needed to talk with her. He asked her if she would tell him what had taken place on September 13, 1976, when she had been robbed and shot. Miss Dopps stated that she heard the cab company dispatcher put out a call for a fare at the Hawk's Pharmacy at 501 North Hillside, whereupon she responded and advised that she would take the call as she was in the area. She drove to the Hawk's Pharmacy and picked up a young black couple, a male and a female. She was informed that they wished to go to 20th and Stadium Streets. The black male asked her how much it would cost. Miss Dopps told the young man that it would cost $1.85. He responded that he only had two dollars. She said that would be fine because the fare would not be that much. Miss Dopps stated that when she arrived in the 2000 block of Stadium Street she drove into a driveway that was pointed out to her by the black male. He got out of the right door and walked around to the left driver's side next to her. He then told her that he would rather have $1.85 instead of giving her that

amount. He then placed a pistol against her neck and pushed her head down towards the seat demanding money. She started to give him what money she had and for some reason unknown to her the black male called her an obscene name and then shot her in the face. Miss Dopps stated that she had given the young man approximately $10.00. Detective Rummery then showed Miss Dopps a series of eight photographs of black males and asked her if she could identify her attacker. Miss Dopps looked at the photographs numerous times and retained four of the eight saying that they were similar to the person who had robbed her. One of the four photographs retained by Miss Dopps was of the defendant, Edward J. Berry. Detective Rummery also showed Miss Dopps a series of six photographs of black females. After carefully looking at those photographs Miss Dopps retained two of those. One was a photograph of Barbara Harris. Miss Dopps stated that she did not know whether she would be able to recognize her attackers. The inside of the cab was dark.

The statute which governs the admissibility of hearsay statements such as these is K.S.A. 60-460(*d*)(3). It reads:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . . . . . . . . . . . . . . . .

"(*d*) *Contemporaneous statements and statements admissible on ground of necessity generally.* . . . (3) if the declarant is unavailable as a witness, a statement narrating, describing or explaining an event or condition which the judge finds was made by the declarant at a time when the matter had been recently perceived by the declarant and while his or her recollection was clear, and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort;"

When the statement was admitted at the trial the declarant was dead. The statement by declarant narrated events which she had perceived eight days prior to making the statement. The court determined that her recollection of events was clear, that the statement had been made in good faith prior to the commencement of the action, and that it was made with no incentive to falsify or distort. This fulfills the requirements of the statute, and the court's findings are amply supported by the evidence. A hearsay statement made by a declarant who is unavailable as a witness may be admitted if the trial judge makes the findings required by K.S.A. 60-460(*d*)(3), even if such statement was not made contemporaneously with the event or condition it narrates,

describes or explains. (*State v. Adams,* 223 Kan. 254, 573 P.2d 604; *Smith v. Estate of Hall,* 215 Kan. 262, Syl. ¶ 4, 524 P.2d 684; and *State v. Brown,* 220 Kan. 684, 688, 556 P.2d 443.)

The appellant in this court attempts to raise a constitutional question which arises in the application of this statute since the opportunity to confront the witness is precluded. He cites no cases directly in point. Our limited research indicates the high court has never spoken definitively on the question and it has treated the question on a case by case basis. The final decisions on the question depend on many considerations including necessity, probative value, and reliability, to name a few. It would appear the requirements of the statute bear upon those considerations. However, since this is a constitutional question which was not presented in the court below and which is only superficially presented on appeal, we do not consider the point as properly before us. Where constitutional grounds for reversal of a judgment are asserted for the first time on appeal they are not properly before the appellate court for review. (*State v. Ambler,* 220 Kan. 560, 562, 552 P.2d 896; *State v. Estes,* 216 Kan. 382, 385, 532 P.2d 1283.)

As his final point appellant argues there was not sufficient evidence presented upon which the jury could find that there was a sufficient causal relationship between the gunshot wound to the head and the death of Gwen Dopps. It is argued the cause of death as shown by the evidence was based on an inference which was no more than surmise, conjecture, or possibility. If appellant's evaluation of the evidence is correct this would be in violation of our holdings in *State v. Nichols,* 212 Kan. 814, 818, 512 P.2d 329, and *State v. Taylor,* 212 Kan. 780, 788, 512 P.2d 449.

A review of Dr. Eckert's testimony convinces this court that appellant's evaluation of the evidence is incorrect. Within two or three hours of Gwen Dopps' death, Dr. Eckert, a certified pathologist in general and forensic pathology, conducted a post-mortem examination upon the body of Gwen Dopps. Dr. Eckert conducted an extensive examination both externally and internally which included dissection of the major organs of the body and an x-ray examination. Dr. Eckert found evidence of a very severe hemorrhage in the body of Miss Dopps. The hemorrhage had emanated from a large "Cushing's ulcer" located in the small

intestine. He removed several bullet fragments from both the interior and exterior of Miss Dopps' skull and also removed numerous fragments from the inside of her brain, noting that the fragments had caused brain damage. In his examination, Dr. Eckert noted that there was no evidence of any prior ulcers in Miss Dopps' intestines. At trial Dr. Eckert testified that in his opinion the ulcer which had resulted in the death of Miss Dopps was a type associated with a head injury, stroke, or some massive catastrophe involving the brain. He stated that based upon his experience in studying this type of injury the ulcer was one commonly known as a "Cushing's ulcer". He stated that this type of ulcer was a stress ulcer where the ulceration occurred in response to injuries related to the brain such as trauma caused by a gunshot wound. Noting that a "Cushing's ulcer" only occurs in a very low percentage of cases, he spoke with the chief medical examiner of Phoenix, Arizona, about this particular case. The examiner agreed that in this particular case it was an example of the "Cushing's ulcer". Under extensive cross-examination, Dr. Eckert testified that the case in point was a head injury-ulcer combination, an example of an acute stress ulceration. He negated both defense theories as to the cause of the ulcer. He stated that there was no medical evidence of a cause and effect relationship between steroid therapy and ulcers. This was in response to testimony elicited at trial which showed that Miss Dopps had been taking a steroid medication. Dr. Eckert further testified that the ulcer which caused the death of Gwen Dopps was an acute ulcer and not a chronic ulcer as contended by the defendant. He concluded that death was caused by the injury, ulcer and hemorrhaging which were causally connected.

When a verdict is challenged for insufficiency of the evidence in a criminal case the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt viewed in the light most favorable to the state. In determining the sufficiency of the evidence the court considers only evidence favorable to the decision. *State v. Childers,* 222 Kan. 32, 563 P.2d 999; *State v. Ritson,* 215 Kan. 742, 529 P.2d 90.

In the present case, the defendant challenges the sufficiency of the evidence presented to prove the cause of the acute ulcer that resulted in the victim's death. He takes the position that the

evidence of a causal connection between the head injury inflicted by the defendant and the acute ulcer is insufficient. It is well recognized that the weight to be given the evidence and the reasonable inferences of fact to be drawn from that evidence are within the province of the jury. *State v. Duncan,* 221 Kan. 714, 562 P.2d 84; *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290.

In the present case there was eyewitness testimony that appellant shot the victim in the head and that she died 30 days later while still in the hospital. There was expert testimony from the doctor who conducted the autopsy on her body. He testified the head injury caused the stress ulcer which in turn brought about her death from loss of blood. Such expert testimony cannot be classed as mere surmise, conjecture, or possibility.

When the doctor conducts an autopsy and from such examination testifies the victim's death was the result of hemorrhaging from a "Cushing's ulcer" caused by a gunshot wound in the head such testimony possesses the requisite degree of probative force to support a finding that the victim died as a result of the gunshot wound.

The judgment is affirmed.