No. 52,848

STATE OF KANSAS, *Appellee,* v. WILLIAM F. SCHLICHER, *Appellant.*

(639 P.2d 467)

Opinion filed January 15, 1982.

*Michael V. Foust,* of Foust & Vignery, of Goodland, argued the cause and was on the briefs for the appellant.

*Perry Warren,* special prosecutor, argued the cause, and *Robert T. Stephan,* attorney general, and *Jerry D. Fairbanks,* special prosecutor, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from a conviction of murder

in the first degree (K.S.A. 21-3401). The facts in the case were essentially as follows: During the early morning hours of November 8, 1970, it was discovered that Wallace Newton Patton was missing from his place of employment at a Mobil Service Station just off the east interchange of Interstate 70 at Goodland, Kansas. At 12:30 a.m. Patton had talked by telephone with his wife from the station. At that time nothing was amiss. Some time between 12:30 a.m. and 1:00 a.m., Patton was observed working by a Goodland police officer making his rounds. Shortly thereafter, motorists in need of service found the attendant missing and the cash register drawer open. The police were notified, and an investigation followed.

Searching police officers found Patton's body around 8:00 a.m., November 8, 1970. A subsequent autopsy showed that Patton had sustained gunshot wounds—two directly through the chest, damaging the heart's left ventricle, and two in the head and neck, causing serious brain injury. The coroner testified that any one of three shots could have caused Patton's death, but that probably the shot through the left ventricle was the cause of death. No murder weapon was ever found. Police investigation continued and numerous witnesses and suspects were contacted and questioned over the years without charges being filed. The defendant, William F. Schlicher, was among those interviewed on several different occasions. Finally in January or February of 1980, Marvin Dale Seigrist contacted the police to let them know that he had information regarding the Patton murder. Seigrist gave several conflicting and contradictory statements to the police and the KBI implicating the defendant. Finally, in exchange for immunity, Seigrist gave a statement which supported probable cause for an arrest warrant to be issued against defendant Schlicher for the Patton homicide.

On February 28, 1980, Schlicher was arrested by Louisiana state police officers, Don Connor and Emile Bourgoyne, on an outstanding Kansas parole violation warrant. On March 2, 1980, a complaint was filed in the district court of Sherman County charging defendant with the murder of Wallace Newton Patton. Defendant was then returned to Kansas from Louisiana. A preliminary hearing was held. Defendant was thereafter arraigned on July 7, 1980. The defendant filed numerous pretrial motions which will be discussed later in the opinion. The trial of the case

began on September 15, 1980, and lasted until September 22, 1980, when the jury returned a verdict of guilty of murder in the first degree. Defendant filed a motion for a new trial which was denied. The defendant then appealed to this court.

At the outset, it should be stated that the only real issue in the case was the identity of the killer. The State's principal witness was Marvin Dale Seigrist, who testified as an eyewitness to the homicide. As noted above, he gave a number of statements which were conflicting and contradictory as to the place where the shooting occurred, the time when the shooting occurred, and the persons who were present. In addition, the State offered evidence of seriously damaging admissions made by the defendant which involved him in the commission of the crime. These will be discussed later. The only defense evidence offered was to show that the defendant was working until 12:30 a.m. on the night the crime occurred. The testimony of Seigrist indicated that the shooting took place much later during the morning of November 8. The defense alibi testimony did not exclude the possibility that the defendant had committed the homicide at the later time. To sum it up, the State's evidence consisted of the testimony of an eyewitness accomplice coupled with damaging admissions made by the defendant.

On the appeal, the defendant raises ten points of claimed trial error. The defendant first contends that the trial court abused its discretion in refusing to grant a change of venue. In support of his motion, defendant submitted a number of news articles about the filing of the case against him and the progress of those proceedings, as well as articles voicing local concerns about crime and problems with youth generally, and two affidavits of local citizens saying they felt defendant could not get a fair trial in Sherman County.

In *State v. Sanders,* 223 Kan. 273, 280, 574 P.2d 559 (1977), this court summarized the rules on change of venue in criminal cases as follows:

"Thus, it has been held (1) the burden of proof is on defendant, (2) not only prejudice must be shown but it must be such prejudice as to make it reasonably certain the defendant cannot obtain a fair trial, (3) there must be more than speculation, (4) the state is not required to produce evidence refuting that of the defendant, and (5) granting a change of venue lies within the sound discretion of the trial court and its ruling will not be disturbed if supported by competent evidence and if there is no showing of prejudice to the substantial rights of the defendant."

Reviewing the news articles, we find they are not inflammatory or pervasive, but rather, objective and factual. Those articles regarding crime and the problems of youth generally are not tied to the Schlicher case, but, rather voice concerns which are probably common in every community. The claim of prejudice does not rise above the level of speculation. We hold that the trial court did not abuse its discretion in denying defendant's motion for a change of venue.

The defendant's second, third, and fourth issues involve claims by the defendant that the trial court abused its discretion in denying defense counsel the opportunity to take a certain pretrial deposition and to obtain tape recorded and written statements and reports prepared by investigating officers in the case. Defense counsel desired to take the pretrial deposition of James Hoard, who testified at the trial. Counsel wanted to take the deposition to preserve possible exculpatory evidence for impeachment purposes at the trial. In determining this issue, we note that granting the right to take depositions in criminal cases is discretionary with the trial court. The court's ruling is to be based on the possible *unavailability* of the witness at the trial. K.S.A. 22-3211(1) provides:

"22-3211. **Depositions.** (1) If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an information or indictment may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place."

Since James Hoard was in attendance at the trial and thus available, it appears that a deposition to preserve his testimony was not required. We cannot say that the trial court abused its discretion in denying the motion. We also wish to point out that the prosecutor arranged to have defense counsel interview the witness prior to trial. Thus defense counsel cannot properly claim that he was surprised by the testimony of the witness.

The defendant also sought a court order for the discovery of all tape recordings and written statements of all persons contacted by the prosecution during investigation of the case, and further for inspection of any reports, memorandum, or other internal

documents made by any officer regarding the case. In his brief, defense counsel admits that the discovery statute (K.S.A. 22-3212) was complied with by the district court. Furthermore, it is clear that the prosecution opened its file to the defendant, and defense counsel had an opportunity to examine such testimony prior to trial. Under all the circumstances, we find no error on these three points involving refusal of the trial court to permit discovery.

The defendant's fifth point is that the trial court erred in refusing to grant a defense motion to dismiss the case because the written statement of Marvin Dale Seigrist, given in exchange for immunity from prosecution and used in support of probable cause for the arrest warrant, differed from his testimony actually given at the preliminary hearing. Further, it is contended that, because Seigrist had a long history of institutionalization for mental illness, his testimony was inherently unreliable. We find no error in the court's ruling. The objections to the inconsistencies in Seigrist's testimony did not go to the basic elements of the offense charged and defendant's connection with the crime. They simply raised questions as to the weight to be given to Seigrist's testimony and its reliability.

Under this point, the defendant also complains that he was denied a speedy trial because the crime occurred on November 8, 1970, and the defendant was not charged with the offense until a complaint was filed on March 2, 1980. The evidence in the case disclosed that the defendant had been interviewed as a possible suspect shortly after the crime was committed and on several other occasions thereafter, but he was not officially charged with the crime until March 2, 1980. The law is clear that the right to a speedy trial required by both state and federal constitutions is essentially the same. One *accused* of crime has the right to be tried promptly and with reasonable dispatch. The right attaches when an individual becomes an "accused." *State v. Wilson,* 227 Kan. 619, 621, 608 P.2d 1344 (1980); *United States v. Marion,* 404 U.S. 307, 30 L.Ed.2d 468, 92 S.Ct. 455 (1971). Under the statutes of Kansas, there is no time limitation on a prosecution for murder; it may be commenced at any time (K.S.A. 21-3106[1]). The record in this case shows that until Marvin Dale Seigrist contacted the police authorities and gave information about the defendant's participation in the crime, the State did not have probable cause to commence a prosecution. As soon as that information was

received in January or February of 1980, the State filed a complaint in Sherman County on March 2, 1980, charging defendant with the Patton murder.

Under all the circumstances, we find no basis for a claim that the defendant was denied his constitutional right to a speedy trial. A determination of a constitutional violation of an accused's right to a speedy trial depends on the facts and circumstances of each case and the mere passage of time is not determinative. In the present case, shortly after the filing of the complaint on March 2, 1980, the defendant was brought to Kansas from the State of Louisiana. On June 2, 1980, the preliminary hearing was held; arraignment took place on July 7, 1980; and trial of the case commenced on September 15, 1980. Clearly, the requirements of the statute (K.S.A. 1980 Supp. 22-3402[1]) were satisfied, since the defendant was brought to trial within 90 days after his arraignment on the charge. We find that the State acted promptly and without unreasonable delay in formally charging the defendant and bringing him to trial after obtaining the information provided by Marvin Dale Seigrist. We, thus, find no error in the trial court's order overruling the defendant's motion based on a claim that he was denied a speedy trial.

Defendant's points six, seven, and eight are interrelated and raise questions pertaining to the testimony of certain State's witnesses. In issue No. 6, the defendant complains about the admission of evidence of other crimes. In issue No. 7, defendant complains about certain evidence admitted for the purpose of showing the identity of the defendant as the killer. In issue No. 8, defendant complains that certain out-of-court admissions made by the defendant were erroneously admitted into evidence. Since each of these issues involve certain specific witnesses, we will consider the testimony of the witnesses separately.

The defendant complains about the testimony of James Hoard, who was a school friend of the defendant at the time of the murder. Hoard testified regarding certain statements made by Schlicher shortly after the murder occurred. According to Hoard, defendant told him that Patton's body had been dumped in the country and that Patton had been shot four times, twice in the chest, once in the head, and once in the neck. The sheriff, Jack Armstrong, indicated that this was information which had not been released generally to the public. This evidence was pre-

sented by the State to demonstrate that the defendant had knowledge about the particulars of the crime, before that information became public information. The fair inference from this testimony was that the defendant had specific knowledge about the circumstances of the crime which would be possessed only by one who was actually present when the crime took place. We find no error in admitting this testimony.

James Hoard was further allowed to testify as to his and defendant's involvement in a certain armed robbery in Burlington, Colorado, and a burglary in Colby, Kansas, in 1972. According to Hoard, at the beginning of the execution of those crimes, the defendant turned to him and said, "If something goes wrong and I have to shoot him, you're going to shoot him too because I'm not going to take the rap by myself." Seigrist, at the trial, testified that, following the abduction of Patton, they drove into the country and parked. Patton was told to get out of the car. Seigrist observed the defendant raise his arm which was followed by two shots. Then Seigrist saw defendant move his arm to the side toward the other participant, Charles W. Kauffman. He saw Kauffman raise his arm and he heard two other shots. In the State's case in chief the coroner testified that there were four gunshot wounds in the body—two of the shots were in the chest damaging the heart's left ventricle, and two in the head and neck, one seriously disrupting the cerebellum. The State contends that, after defendant had fired the gun at Patton, he handed the gun to Kauffman and then Kauffman shot Patton while he was lying on the ground. The State offered this evidence to show the *modus operandi* of the crime, thus showing a likelihood that the defendant committed the homicide of Patton in accordance with the procedure which he suggested later to Hoard to be followed in the commission of the crimes at Burlington, Colorado, and Colby, Kansas. Under all the circumstances, we cannot say that the trial court committed error in admitting this testimony. Although the issue presented is a close one, evidence of the defendant's *modus operandi* did have relevancy and was admissible on the issue of identity. We also have concluded that, if the admission of this testimony was error, it was harmless error in view of the incriminating admissions made by the defendant which will be discussed later in the course of the opinion.

The defendant complains about the trial court's admitting the

testimony of William Howard. William Howard, called by the State, testified that he was incarcerated with the defendant in the Cheyenne County jail in 1972. According to Howard, he and the defendant had been discussing the murder of Wallace Patton. They were playing cards, and the defendant suddenly went berserk and started grabbing the bars and yelling, "I killed him. I killed him." Under the circumstances, this statement made by the defendant constituted an incriminating admission that he had killed Patton. It was clearly admissible. The defendant contended that the evidence that he and Howard were confined together in the Cheyenne County jail at the time the statement was made was prejudicial, because it showed other criminal conduct on the part of the defendant. We hold that the evidence was admissible to present properly the defendant's incriminating admission to the jury, since it was reasonably necessary for the State to show where the defendant's statement was made and under what circumstances.

The defendant next complains about the testimony of Mark Spray, a KBI agent, and that of William Cox, Don Connor, and Emile Bourgoyne, the Louisiana police officers, who arrested defendant Schlicher on a Kansas parole violation warrant. Mark Spray was the investigating KBI agent when Marvin Dale Seigrist made his disclosures as to defendant's participation in the crime. Spray got in touch with William Cox in his efforts to locate the defendant in Louisiana. Spray's testimony showed that an outstanding parole violation warrant issued in 1975 was used to provide the basis for arresting Schlicher and returning him to Kansas. The purpose of this testimony was to set the stage for the subsequent testimony of the arresting Louisiana police officers, Don Connor and Emile Bourgoyne. Connor and Bourgoyne arrested defendant Schlicher on the Kansas parole violation warrant. They testified as to certain statements made by Schlicher upon his arrest. According to them, when defendant was confronted with the parole violation warrant in Louisiana, he made four inculpatory statements which indicated his participation in the murder of Patton in 1970. The officers testified that the defendant stated in substance:

(1) No, that's not it. They want me for something that happened ten years ago;
(2) It doesn't seem fair after ten years, all this time, that I finally get caught;
(3) It's just a bunch of hick cops back in Kansas who have been after me for about ten years; and

(4) I know what the deal is. It's either my partner copped out on me or this is all bull shit.

These statements of defendant were apparently made spontaneously. In examining these statements, it seems to us they show that the defendant knew that he was not being arrested for a Kansas parole violation but was actually being arrested for the murder of Wallace Patton. In order for these statements to have any relevance, it was necessary for the State to show that the defendant was not being arrested for the murder of Wallace Patton but instead on the Kansas parole violation which had been issued in June of 1975. Under the circumstances, the admission of evidence of the existing Kansas parole violation was permissible to show the circumstances under which the damaging statements of defendant were made and thus were relevant to prove the offense charged. As pointed out in *State v. Martin*, 208 Kan. 950, 952, 495 P.2d 89 (1972), the admissibility of evidence tending directly to establish a crime is not destroyed because it discloses the commission of another and separate offense. Evidence of the arrest of defendant on the parole violation was relevant to demonstrate to the jury that the defendant knew that he was being arrested for the murder of Wallace Patton, not for the parole violation. Under all the circumstances, we find that the trial court did not commit error in admitting the testimony of James Hoard, William Howard, Mark Spray, William Cox, Don Connor, and Emile Bourgoyne. In each instance, the testimony about other crimes was admissible to show the background and circumstances present when the defendant made damaging admissions which connected him with the commission of the Patton homicide. The admissions themselves were clearly relevant and admissible to show the defendant had particular knowledge about the circumstances of the crime and his participation therein. We thus find no error in the defendant's points six, seven, and eight.

As his ninth point, the defendant claims that the trial court committed reversible error in refusing to admit certain tape recordings of Seigrist's statements for the purpose of showing the inconsistencies and contradictions in his various statements. Marvin Dale Seigrist testified on direct examination at the trial that he was with the defendant on Saturday, November 7, 1970,

and that they spent most of the day together. Later that evening they went to the Mobil station where Patton was employed. Seigrist testified that he saw the defendant put a gun into the front of his shirt and that defendant and Kauffman went into the station and returned with the victim, Patton. Seigrist could not remember the exact time this occurred. The witness testified that they drove out in the country and stopped the vehicle. Defendant and Kauffman got out of the car and told Patton to get out. They walked down the road 20 to 30 feet where the homicide took place. The witness testified that he gave the officers seven or eight different statements which he changed on several occasions because he was afraid of going to prison. He testified that after he was offered immunity, his statement differed from those given before because he wanted to buy time to get a deal or something. On cross-examination, defense counsel vigorously and with great skill brought out many inconsistencies and contradictions in Seigrist's testimony. Defense counsel had previously had an opportunity to hear the tape recordings taken while Seigrist was being interrogated by the various police officers. In its brief, the State points out that Marvin Dale Seigrist admitted 24 times that statements he had previously made prior to the trial were not true. Inconsistencies and contradictions were shown as to the time the offense was committed and the place where the actual shooting occurred. Seigrist frankly admitted that he had not told the truth in his previous statements, and defense counsel clearly demonstrated the witness's unreliability. Following this cross-examination, defense counsel requested the trial court's permission to play the tape recorded statements of Marvin Dale Seigrist within the hearing of Seigrist and the jury. The trial court refused to permit defense counsel to play the tape recordings and refused to admit them into evidence. Defendant contends that this constituted prejudicial error, justifying reversal of the case and the granting of a new trial.

The issue presented is a difficult one. The position of the trial court and the State was essentially that the tape recordings could properly be excluded because the witness, Seigrist, had admitted not only that he had made the previous statements but also that they were inconsistent and contradictory of his testimony at the trial. Hence, there was no necessity to introduce the statement itself for impeachment purposes. The defendant, on the other

hand, argues that the jury should have heard the tape recordings of Seigrist's prior statements in order for the defense to show the full scope of the inconsistencies and contradictions in his testimony to establish his complete unreliability as a witness.

The authorities in this country are divided on the question of whether extrinsic evidence of prior inconsistent statements is admissible once the witness admits to the inconsistencies. In Kansas, K.S.A. 60-422(b) states as follows:

"As affecting the credibility of a witness . . . (b) extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness, may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him or her an opportunity to identify, explain or deny the statement; . . ."

In *State v. Murrell*, 224 Kan. 689, 585 P.2d 1017 (1978), the rule is stated that where the impeaching statement is written, and the witness, although admitting that he gave a statement, cannot remember the contents thereof, or will neither admit nor deny the same, there is ample foundation for admitting the statement itself or at least the impeaching portion thereof into evidence. In *Murrell*, it was held that the trial court erred in excluding the prior written statement under those circumstances. The court, however, found that exclusion of the impeaching statement was harmless error in view of the overwhelming testimony of guilt presented by the prosecution in the case. In *State v. Gauger*, 200 Kan. 515, 519, 438 P.2d 455 (1968), a witness admitted his testimony did not conform with his prior statement as to his whereabouts at the time of the incident. On page 520 of the opinion, it is stated that by the witness in effect admitting that he made the portions of the statement read to him, and that it was perhaps inconsistent with his testimony, there was no necessity to introduce the statement itself for impeachment purposes. The court cited Gard's Kansas C. Civ. Proc. § 60-422 (1963). Judge Gard in Kansas C. Civ. Proc. 2d § 60-422 at page 118 (1979), states that, "[I]f he has admitted making the statement or some statement which is contradictory to his testimony, that ends the matter and there is no occasion to offer it in evidence unless the witness or counsel for the opponent wants it in." This statement by Gard is supported by 4 Jones on Evidence § 26:7 (6th ed. 1972). Other respectable authorities take the position that, even where the witness admits having made the other statements, this

does not prevent the opponent from offering it in evidence by his own witnesses. See 3A Wigmore on Evidence § 1037 (Chadbourn rev. 1970) and the many cases cited therein.

We believe that, in situations such as this, a great deal of discretion must be vested in the trial court to determine whether or not a taped impeaching statement should be played before the jury. If a statement has been transcribed and the impeaching questions and answers are readily available in the transcript and it would be helpful to the jury to know exactly what the prior statement was, then the impeaching portion of the evidence may properly be admitted into evidence. Under K.S.A. 60-422(*b*) a witness must normally be given an opportunity to identify, explain, or deny the statement. If the witness is given such an opportunity, the extrinsic evidence must be admitted where the defendant denies making the statement or testifies that he cannot remember making the statement. *State v. Murrell,* 224 Kan. 689.

Where the witness *admits* having made the contradictory statement, this should not as a matter of law prevent counsel from presenting it in evidence through his own witnesses, provided there is some good reason shown for its admission. The point is that, if the witness clearly admits the prior inconsistent statement, the witness is thereby impeached and further testimony is ordinarily not necessary. That is the basis for the holding of this court in *State v. Gauger,* 200 Kan. at 515.

In the present case, we hold that the trial court did not abuse its discretion or commit reversible error in excluding the proffered tape recordings of Seigrist's prior statements. In the first place, the record is clear that the jury was informed that Seigrist had told a variety of inconsistent and contradictory stories to various police officers. Defense counsel showed that the testimony of the witness was inherently unreliable and, although the jury did not hear all of the questions propounded by the police officers and Seigrist's answers, the jury did receive undisputed evidence that the witness Seigrist had lied on many previous occasions. In the course of the cross-examination of Seigrist, defense counsel was able to pinpoint many of the specific inconsistent statements made by Seigrist. It appears to us that defense counsel was fully able to impeach the witness from the cross-examination he conducted. The playing of the actual tapes to the jury would not have added anything to the impeachment which had already been

accomplished by defense counsel. We, therefore, have concluded that, once the witness Seigrist admitted that he had made various inconsistent and contradictory statements, the trial court did not commit reversible error in refusing to play the tapes to the jury in their entirety.

The defendant's final point on the appeal is that the trial court erred in denying defendant's motion for judgment of acquittal at the close of the evidence. It is defendant's position that Seigrist's testimony was so unreliable that the evidence was not sufficient to sustain a verdict of guilty. The standard of review on appeal to judge the sufficiency of evidence to support a conviction is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Robinson, Lloyd & Clark,* 229 Kan. 301, 624 P.2d 964 (1981). Applying this test to the evidentiary record before us, we have concluded that the evidence was sufficient to support a verdict of guilty of murder in the first degree. The testimony of Marvin Dale Seigrist as an eyewitness to the crime clearly established all elements of that offense. The court gave the jury an appropriate cautionary instruction on accomplice testimony based upon PIK Crim. 52.18 (1971). Having been given that instruction, the jury returned its verdict of guilty.

We think it important to emphasize that in this case the State's evidence did not consist solely of the uncorroborated testimony of Marvin Dale Seigrist. The State's evidence showed that on several occasions the defendant made damaging statements which demonstrated his knowledge of and participation in the crime. The defendant's alibi testimony did not show his whereabouts after 12:30 a.m. on November 8, 1970, when the evidence indicated that the homicide actually took place. Considering the testimony as a whole it is difficult to see how the jury could have arrived at any verdict other than guilty as charged. We believe that the defendant was afforded a fair trial and that the verdict of guilty must stand.

The judgment of the district court is affirmed.