No. 55,363

STATE OF KANSAS, *Appellee*, v. ERIC VAUGHN REEVES, *Appellant*.

(671 P 2d 553)

Opinion filed October 21, 1983.

*Craig Altenhofen*, of Harper & Hornbaker, Chartered, of Junction City, argued the cause and was on the brief for the appellant.

*Lloyd R. Graham*, assistant county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is a direct appeal from the defendant's criminal convictions of aggravated burglary, a violation of K.S.A. 21-3716; rape, a violation of K.S.A. 21-3502; aggravated sodomy, a violation of K.S.A. 21-3506; and terroristic threat, a violation of K.S.A. 21-3419. From convictions rendered by a jury on November 10, 1982, defendant appeals.

On the early morning of August 3, 1982, in Junction City, Kansas, the defendant, Eric Vaughn Reeves, entered the residence of Ms. T. The residence at the time was occupied by Ms. T., her daughter, and her sister's daughter. The victim was asleep in her bedroom while the two children watched TV in the living room. After entering the bedroom, the defendant threatened the victim and then forced her to perform oral sex on the defendant; he attempted to perform anal sex with the victim, raped the victim, and then left the residence. The victim immediately called the police.

The automobile the defendant was driving was stopped by a

Junction City police officer within minutes of the rape for traveling at a high rate of speed. While the officer was issuing a citation for speeding, he overheard a dispatch regarding the rape and the description matched the defendant. The officer placed the defendant under arrest and transported him to the residence of the victim where the victim positively identified the defendant as the assailant.

On August 4, 1982, a search warrant for the person of the defendant was executed in which saliva, blood samples, head hairs, and pubic hairs were collected. Additional blood and saliva samples were collected on September 22, 1982.

When the blood and saliva samples were compared with the rape kit, it was determined that the victim was a secreter of her blood type in her other body fluids and the defendant was a nonsecreter. This proved that the defendant was not eliminated as the assailant since he was a nonsecreter.

In addition, hairs of the defendant collected during the search warrant were compared with hairs found on items collected from the victim and her room. One pubic hair found on a blanket displayed the same microscopic characteristics of the pubic hair collected from the defendant.

The jury convicted the defendant on all counts as charged on November 10, 1982. He appeals.

Defendant initially argues that the jury panel assembled for voir dire by telephone was not legally summoned and should have been discharged. At the hearing on defendant's motion to discharge the panel, the jury clerk testified that in Geary County for each jury term, notice of selection and a jury questionnaire are sent by regular mail to 500 people randomly selected by a computer from the voter registration polls. As the questionnaires are returned, each prospective juror is assigned a number from 1 to 500. If a prospective juror fails to return the questionnaire, a member of the sheriff's office investigates to determine why the questionnaire was not returned. When jurors are needed for a trial, the requisite number of individuals required for a jury panel are contacted by telephone and told to appear on a certain date. If there is no answer when the phone call is made, or if the individual is unable to serve, the jury clerk goes on to the next individual on the list until the proper number of individuals have been orally ordered to appear for jury duty.

The defendant contends that this procedure for notification of selection and assembling the jury panel does not comply with K.S.A. 43-170, which states:

"Whenever names or members of a jury panel or additional names for a jury panel have been drawn, the jury commissioner or jury clerk shall certify the list thereof to the clerk of the court where such panel or additional jurors are to serve. The clerk of such court shall issue proper summons for such persons to appear in such court for jury service on the date and at the time specified by the judge of such court."

Defendant argues the jury in his case was neither "drawn" nor issued "proper summons" as required by the statute. To properly "draw" a jury, defendant claims that the jury selection must be a random and impartial process, which allegedly was not accomplished due to the telephone "lottery." We do not agree.

Defendant asserts a proper summons is a written notice either hand delivered by the sheriff or delivered by restricted or first-class mail. Proper summons is not defined in K.S.A. 43-170, the jury selection statute. Defendant cites K.S.A. 1982 Supp. 60-304, requiring written summons to a defendant in a civil case, and K.S.A. 22-2202 requiring written summons ordering a criminal defendant to appear, as authority for his allegation that an equally formal written summons is required for notifying an individual on a jury panel to appear. Other statutes, however, allow oral notice such as notice for a temporary custody hearing when there is insufficient time to give written notice. Here each prospective juror was summoned, i.e., notified by first-class mail of their selection as a possible juror and the procedure of notification to assemble for jury duty, if needed. The procedure here allows for notification of sufficient jurors during the term and contains the flexibility to require attendance of the proper number of individuals selected for jury duty for each case tried during the juror's term of service.

This court has repeatedly made a distinction between mere irregularity and palpable disregard of the law in improper jury selections. In State v. Campbell, 217 Kan. 756, 539 P.2d 329, cert. denied 423 U.S. 1017 (1975), this court held the statutory jury selection process was "directory in nature and not mandatory, and absent corruption, serious misconduct or palpable disregard of the law, a defendant may not successfully challenge the jury panel for mere irregularities in its selection process." 217 Kan. at 763. To demonstrate a palpable disregard of the law

the appellant must show "a recognizable identifiable class of persons, otherwise entitled to be jury members, has been purposefully and systematically excluded from jury service." 217 Kan. at 765. Defendant makes no showing of bias or improper purpose in the method used. Here the jury panel was chosen by a random computer selection from the voter registration polls, and notified of the period each prospective juror was to be available to serve. Use of the telephone "lottery" to inform each prospective juror of the exact day that juror was to appear for service does not violate K.S.A. 43-170.

Defendant's second and third issues concern the admissibility of the victim's testimony regarding two prior incidents of contact with the defendant in her home. On July 15, 1982, the victim was asleep in her bed. Her boyfriend, who lived with her, was asleep on the couch in the living room. The victim, Ms. T., had been at a small party in her own home earlier that evening and was intoxicated. She awoke to find someone having sexual intercourse with her and assumed it was her boyfriend. When the man got up to go to the bathroom, she saw his profile and realized it was not her boyfriend. The individual then left her home. Ms. T. woke her boyfriend and told him what had occurred but the police were not contacted. One week later Ms. T. was again in bed asleep; this time her boyfriend was in bed with her. At about 12:30 a.m. she was awakened to find a man touching her breast. Her boyfriend awoke and asked what was happening. The man told both Ms. T. and her boyfriend to lie still or he would blow them away. The door to the hall was open and the hall light was on. The man left immediately after speaking. That time Ms. T. called the police and made a report on the breaking and entering. At the trial, Ms. T. could not positively identify the defendant as the person who had entered her home on these two occasions.

On August 3, 1982, when the victim discovered the defendant had entered the room she stated, "Why are you here again," and the defendant responded "if you make it good this time I won't come back."

At the trial Ms. T. identified the defendant as the person who entered her home on August 3, but could not positively identify the defendant as the person who had intruded on the two prior occasions.

The defendant argues the admission of the two prior incidents was improper since the court failed to conduct a hearing outside the presence of the jury to determine the admissibility of those incidents. On the date the trial commenced, prior to the presentation of evidence, and without filing a written motion, defendant's attorney requested a hearing on a motion in limine to exclude all testimony of the two prior incidents. At the hearing on the motion, defendant claimed (1) since the State had failed to file additional charges arising out of the two prior incidents, they were not relevant; (2) the victim could not positively identify the defendant as the person or persons involved; therefore, the evidence was not admissible under K.S.A. 60-455; and (3) admission of that testimony would be so prejudicial that the defendant could not receive a fair trial. Defendant's attorney chose not to present evidence, but stated into the record his request that the judge exclude any testimony of each witness which would refer to the two prior incidents. The State argued against the defendant's motion in limine, but presented no evidence.

Defendant claims when his motion in limine raised a question of the testimony's admissibility it became incumbent upon the State to present evidence to the trial judge demonstrating relevance, materiality, and admissibility of the questioned evidence, and the State's failure to proffer the evidence precluded a proper ruling by the trial judge prior to its presentation to the jury.

To protect against prejudice and to assure the parties a fair trial, certain guidelines for use of a motion in limine are set out in *State v. Quick*, 226 Kan. 308, 312, 597 P.2d 1108 (1979). In *Quick* the court stated:

"It is important that a proper written motion be filed to pinpoint the material or evidence to be protected against. This is necessary together with an order of the court setting forth the specific basis for exclusion or admission. A mistrial or reversible error on appeal may be avoided by having a proper motion and order drawn and filed. See *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (1977). We repeat, it is important for the motion to state the specific matter that the movant believes to be inadmissible and prejudicial. The motion should not be general in scope. See *Lewis v. Buena Vista Mutual Insurance Association*, 183 N.W.2d at 201.

"When entering the order it should be temporary in nature. It is entered before trial and no one knows exactly what will turn up later during the trial. When a protective order has once been granted the offer of proof during the course of the trial must be made in the absence of the jury. It is possible events during the trial, bearing directly on questions of relevance, may support a change in the protec-

tive order. See *Twyford v. Weber*, 220 N.W.2d 919, 923 (Iowa 1974). There are instances when a motion in limine may be taken under advisement, reserving the right to rule upon the matter when it arises at trial. See *City of Indianapolis, Dept. of Met. Dev. v. Heeter*, 171 Ind. App. 119, 355 N.E.2d 429 (1976). Care must be exercised during trial because prejudice may be implanted in the minds of the jurors by asking unanswered questions and by making statements which are subsequently stricken. When such a motion is taken under advisement by the court the matter should not be raised except in the absence of the jury."

Under the circumstances of this case, the trial judge's refusal to rule on the defendant's motion in limine until the evidence was presented during the trial was proper.

Defendant's next contention is that the evidence of the two prior incidents could not be admitted into evidence under any theory. We do not agree.

Defendant claimed the evidence was only admissible under K.S.A. 60-455 to show identity of the defendant. Prior to admission of this evidence, the trial court did not find that the other crime or crimes were (1) relevant to prove, (2) a material fact that is substantially in issue, and (3) then balance the probative value of the evidence against its prejudicial effect. Therefore, the two prior incidents should not have been admitted to prove identity.

The State presents several theories for admission of the evidence in addition to K.S.A. 60-455 to show identity: (1) testimony about other crimes which are admissible as part of the background and circumstances present when the defendant made damaging admissions which connected him with the crime charged (*State v. Schlicher*, 230 Kan. 482, 639 P.2d 467 [1982]); (2) acts done or declarations made before, during, or after the happening of the principal fact may be admissible as part of the res gestae where the acts are so closely connected with it as to form in reality a part of the occurrence (*State v. Gilder*, 223 Kan. 220, 228, 574 P.2d 196 [1977]); and (3) evidence of prior acts of a similar nature between the defendant and the victim is admissible independent of K.S.A. 60-455 if the evidence is not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged. See *State v. Wood*, 230 Kan. 477, 638 P.2d 908 (1982). Admission of the two prior incidents of entry into Ms. T.'s home explains the background underlying the statements of the victim and the

intruder. The trial court did not err in admitting evidence of the two prior incidents.

Defendant's last claim that the charges of making terroristic threats and rape are unconstitutionally multiplicitous is correct. Under the facts of this case the defendant could not be convicted of both rape and terroristic threats.

It is a general principle of law that the State cannot split a single offense into separate parts. Where there is a single wrongful act, it will not furnish the basis for more than one criminal prosecution when the elements of one crime are included in another. An exception to the general rule is the charge of felony murder. There the elements of one offense are included in the other offense and there can be prosecution for both offenses arising out of a single wrongful act.

Multiplicity was discussed in *State v. Chears*, 231 Kan. 161, 643 P.2d 154 (1982), and *State v. Garnes*, 229 Kan. 368, 372-73, 624 P.2d 448 (1981). The court stated:

> " 'Multiplicity in criminal pleading is the charging of a single offense in several counts. . . . Multiplicity exists when the State attempts to use a single wrongful act as the basis for multiple charges. The general principles for determining whether charges are multiplicitous are these:
>
> " '(1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.
>
> . . . . .
> " '(2) If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.
>
> . . . . .
> " '(3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act.' " 231 Kan. at 162-63.

Here the defendant was convicted of rape and terroristic threat. Both terroristic threat or rape contain the element of threat or fear to intimidate or overcome the victim's will to resist the demands of the aggressor. All threats made by the defendant were incidental to the commission of the sexual crimes in this case. The threats were used to induce fear, a required element for the offense of rape.

The judgment of the trial court is affirmed as to the convictions of aggravated burglary, rape and aggravated sodomy. The judgment as to the conviction of terroristic threat is reversed. This case is remanded to the trial court for modification of the sentence in conformance with this opinion.